# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LISA BETH PLEUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 06-4231-CV-C-NKL |
| ) | |
| CINGULAR WIRELESS LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Lisa Pleus ("Pleus") brought this action against her former employer, Cingular Wireless LLC ("Cingular"), asserting claims of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (2000), gender discrimination under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e, et seq. and gender and age discrimination under the Missouri Human Rights Act (MHRA), §§ 213.010, et seq. The case is before the Court on Cingular's motion for summary judgment [Doc. # 49]. For the reasons set forth below, Cingular's motion is GRANTED.

**I.     Facts[1]**

Cingular manages the sale of its wireless telephone services through regionally based Directors of Sales. These Directors supervise teams of sales managers who in turn

---

[1]The facts are viewed in the light most favorable to Pleus, the nonmovant.

1

supervise teams of sales representatives. On September 1, 1996, Cingular's office in Jefferson City, Missouri, hired Pleus as a "market manager" at the age of thirty-eight, a position she held until 2002. From 2002 to 2005, Pleus served as a sales manager in Cingular's business-to-business sector, where her performance "frequently exceeded . . . objectives and Critical Success Factors." (Pl. Ex. J). In 2004, Cingular and AT&T Wireless merged. Cingular hired Don Goodlow, an AT&T employee at the time of the merger, to be Director of Sales in the Midwest Region for the Corporate Markets Group for the newly merged entity. In this position, Goodlow directly supervised a merged team of Cingular and AT&T sales managers.

Between 2004 and 2005, Cingular decided to reduce the number of sales representatives servicing clients with fewer than 100 employees. Cingular's purpose was to focus on larger accounts. (Brownlee Aff. ¶ 11). The reduction in sales representatives also reduced the need for sales managers. *Id*. ¶ 15. As a result of those reductions, all of Cingular's Directors of Sales, including Goodlow, were required to reduce the number of sales managers in each region by one. *Id*. ¶ 16. Cingular's Corporate Markets Group and Sales Operation Team developed the criteria for the reduction-in-force ("RIF"). *Id*. ¶ 17. The RIF criteria were based on the size and location of accounts. *Id*. ¶ 19. According to Cingular, Pleus's region, mid-Missouri, did not have any large accounts, while Kansas City and St. Louis had several. (Goodlow Dep. 39-40, 72, 84). According to Cingular, the final calculation was based on the number of accounts that would sustain one sales representative for a given region. The mid-Missouri region would support, at most, two

2

sales representative positions.

After the merger, eight (8) sales managers operated in the Midwest Region. (Brownlee Aff. ¶ 5). Four sales managers were responsible for an entire state: Kim Tullis (Oklahoma), Bryon Childress (Arkansas), Scott Mastenbrook (Kansas), Karl Bricker (Nebraska). The remaining four sales managers shared regions in one or more states: Pleus managed mid-Missouri and west St. Louis, Missouri; Jeff Robinson managed east St. Louis, Missouri, and East St. Louis, Illinois, as well as the bootheel region of Missouri; Carter Dewey and Scott Nash shared Minnesota, with Nash also sharing Iowa with Bricker. Pleus contends that she supervised seven sales representatives, four of whom were located in St. Louis. In her deposition, however, she said that she supervised five sales managers.

Goodlow testified that he terminated Pleus because Pleus resided in Jefferson City, Missouri, where only one sales representative was located,[2] and Robinson resided in St. Louis, which was close to several larger accounts. *See* (Brownlee Aff. ¶¶ 22, 26); (Goodlow Dep., 69). Goodlow testified that he did not consider offering relocation to Pleus because he had been instructed that "relocation was not available" for any employee. (Goodlow Dep., 72).

Pleus argues that if her region, which included west St. Louis, lacked "larger accounts," it was because Goodlow forced her to relinquish those accounts to Robinson to

---

[2]Two sales representative slots were in mid-Missouri, but only one was filled.

"create a situation" where Pleus's position looked favorable for elimination. (Pleus Dep. 169-172). Goodlow had received complaints from sales representatives Robinson supervised. In a meeting with his sales representatives, Robinson said that he quit. After the meeting, Goodlow told Robinson that his behavior was inappropriate and if he said that again Goodlow would accept his resignation. After Pleus was terminated, Robinson again resigned and Goodlow accepted the resignation.

According to Pleus, after Goodlow became Director of Sales, he consistently favored his male sales managers and made statements giving rise to an inference of gender animus.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining

4

whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

### 1. *Pleus's prima facie case*

The parties agree that the *McDonnell Douglas* analysis applies to Pleus's ADEA, Title VII, and MHRA claims. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Chambers v. Metro. Prop. and Cas. Ins. Co.,* 351 F.3d 848, 855 (8th Cir. 2003). Under *McDonnell Douglas,* Pleus must establish a *prima facie* case of discrimination, at which point Cingular must come forward with a legitimate nondiscriminatory reason for its conduct. *See Chambers,* 351 F.3d at 855. In response, Pleus must then demonstrate that the nondiscriminatory reason offered by Cingular was a pretext for discrimination. *Id.*

As a threshold matter, Pleus admitted in her deposition that age did not play any role in her dismissal. (Pleus Dep., 154). Therefore, the Court grants summary judgment on Pleus's ADEA claim, even though she was the oldest employee to be terminated.

To establish a *prima facie* case of gender discrimination, Pleus must demonstrate that: (1) she is a member of a protected class; (2) she was qualified; (3) she was subjected to an adverse employment decision; and (4) some evidence of record supports the inference of gender discrimination. *See Douglas v. Nebraska,* 488 U.S. 802 (1988);

5

*Kindred v. Northome/Indus. Sch. Dist. No. 363,* 154 F.3d 801, 803 (8th Cir. 1998). Cingular concedes that Pleus has met her burden with regard to the first three elements of her gender discrimination claim. Pleus may meet her burden on the fourth element by showing she was treated differently than other, similarly-situated employees who were not members of the plaintiff's protected class. *Wells v. SCI Management, L.P.*, 469 F.3d 697, 701 (8th Cir. 2006).

Pleus has met her *prima facie* burden. Although Cingular asserts that Pleus is not "similarly situated" because she supervised the "fewest number of sales representatives," the record is conflicting as to which sales manager supervised the fewest sales representatives and the facts must be viewed in the light most favorable to the nonmovant. Furthermore, Pleus had good evaluations, but Robinson, a male employee, had been reprimanded.

Cingular cites *Tolen v. Ashcroft*, 377 F.3d 879, 882-83 (8th Cir. 2004), for the proposition that there can be no "mitigating or distinguishing circumstances" in determining whether an employee was "similarly situated." In *Tolen*, the Eighth Circuit ruled that a fired Assistant U.S. Attorney could not establish his *prima facie* case for race discrimination because his misconduct was more severe and more frequent than the minor reprimands issued to other AUSAs and, therefore, he was not similarly situated with regard to the consequences for misconduct. *Id.* Here, Pleus had the same supervisor, was subject to the same standards and there is a dispute of facts concerning the number of employees each sales manager supervised. Unlike the plaintiff in *Tolen*, who had a worse

6

performance record than his coworkers, Pleus's performance was better than her male coworker, but she was let go. The deposition testimony from other sales managers establishes that Pleus was "similarly-situated" for purposes of employment discrimination analysis.

### 2. *Legitimate nondiscriminatory reason and pretext*

Cingular presents a legitimate, nondiscriminatory reason for selecting Pleus for termination: geographic proximity to larger accounts. Therefore, there is no presumption of discrimination and Pleus can avoid summary judgment only if the evidence creates (1) a fact issue as to whether Cingular's stated reasons are pretextual and (2) a reasonable inference that gender was a determinative, or, for purposes of the MHRA, "contributing" factor in Cingular's decision to terminate Pleus. *See Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831 (8th Cir. 2006); *Kohrt v. MidAmerican Energy Co.,* 364 F.3d 894, 897 (8th Cir. 2004); *Mayer v. Nextel W. Corp.,* 318 F.3d 803, 807-08 (8th Cir. 2003); *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007). Pretext may be shown by revealing weaknesses or inconsistencies in the employer's proffered legitimate reasons for an employee's dismissal. *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006).

Pleus claims that one can infer an improper motive because Cingular terminated her instead of Jeff Robinson, a badly-performing male sales manager who shared some St. Louis accounts with her. Robinson declared his resignation in front of his sales representatives shortly before Goodlow informed Pleus of her dismissal. Goodlow

7

reprimanded Robinson for his resignation statement and told him that if he did it again, he would treat it as Robinson's official resignation. Goodlow accepted Robinson's resignation shortly after Pleus's dismissal. (Goodlow Dep. 67).

Pleus has failed to establish a triable issue as to whether Goodlow's decision to terminate her was pretextual. There is no dispute that Cingular did not use job performance to determine which sales manager would be dismissed. (Brownlee Aff. ¶ 35). Rather, Cingular used its analysis of the location of the accounts, whether the accounts were active, whether the accounts represented customers with more than one hundred employees and the size of the accounts. *Id.* ¶ 3. Even if it were true, as Pleus alleges, that Goodlow "forced" Pleus to relinquish accounts to Robinson, no reasonable juror could find that Goodlow did so out of a discriminatory motive and therefore his stated basis for dismissing Pleus - geography - was pretextual. The evidence clearly shows that one sales manager -Robinson - was located in St. Louis, close to the large accounts, and one sales manager - Pleus - was located in Jefferson City, far from large accounts. Pleus did not request to be transferred to St. Louis and did not look for open positions outside of Jefferson City after her termination. (Pleus Dep., 89). Pleus only later stated that she and her husband would have been willing to move to St. Louis had Cingular offered her relocation. (Larry Pleus Aff. ¶ 5). Goodlow did not consider offering Pleus relocation because he was "specifically instructed" that Cingular would not offer relocation to employees, so he did not consider it an option. (Goodlow Dep., 71-72). Pleus makes no allegation that Goodlow is lying nor is there any evidence to

controvert Goodlow's testimony. Goodlow chose to keep Robinson and terminate Pleus because Robinson was located in St. Louis. In essence, the mid-Missouri sales manager position was eliminated and Pleus happened to be located in mid-Missouri.

Pleus has raised factual issues as to whether she had the fewest accounts among the eight sales managers and whether her performance record was superior to other sales managers, particularly Robinson. (Pleus Dep. 103-108, 157; Bricker Dep., 17-20). However, these issues are not material to whether Goodlow's stated reasons for terminating her - proximity to the St. Louis accounts - was pretextual. The Court cannot, without more, question Cingular's decision to retain Robinson. *See Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 780-81 (8th Cir. 1995) (noting that discrimination laws do not give courts authority to act as super-personnel departments); *See also Regel v. K-Mart Corp.,* 190 F.3d 876, 880 (8th Cir. 1999) (explaining that a company's exercise of its business judgment is not a proper subject for judicial oversight). In short, there is no evidence that gender discrimination played either a determinative or a contributing role in Cingular's decision to terminate Pleus. *Mayer v. Nextel W. Corp.,* 318 F.3d 803, 807-08 (8th Cir. 2003); *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. 2007).

Viewing the record in the light most favorable to Pleus, no reasonable fact finder could conclude that Goodlow's proffered reasons for terminating Pleus are pretextual. In addition, the record permits no reasonable inference that gender actually motivated Goodlow's decision to terminate Pleus. The Court, therefore, grants Cingular's motion

for summary judgment [Doc. # 49] on Pleus's age and gender discrimination claims.

                                                            s/ Nanette K. Laughrey
                                                            NANETTE K. LAUGHREY
                                                            United States District Judge

Dated: February 1, 2008
Jefferson City, Missouri